### CHESTER *v.* JUMEL *et al.*

*(Supreme Court, General Term, First Department.*   February 14, 1890.)

NEW TRIAL—NEWLY-DISCOVERED EVIDENCE.
C. C. recovered property for the heirs of J., under an agreement that he **should** have 47½ per cent. of the amount recovered.   After making the agreement, but before recovering the property, C. C. made an agreement with B., whom he had employed to discover the heirs of J., whereby, "in consideration of the services rendered in discovering the heirs of J., and in settling with them, in advance, the basis of the [above] contract," B. was to have, of the 47½ per cent., 7½ per cent., and, on certain contingencies, 10 per cent.   C. C. also made agreements with other persons, securing to them shares of his interest in the agreement with the heirs of J.   In an action to settle disputes as to the amounts the various parties were entitled to, it was adjudged that B. was entitled to 7½ per cent. Thereafter the attorney of B. gave D. C. an option to buy the interest of B. within six months.   Towards the end of that period, D. C. availed himself of the option, and paid the money.   Thereafter C. C. moved to set aside that part of the judgment giving B. 7½ per cent., and for a new trial, on the ground that, before he agreed to give B. the 7½ per cent., the latter falsely represented to him that the heirs of J. had agreed that B. should have that amount of the 47½ per cent. to be allowed for recovering the property.   The affidavit of C. C. showed that he had discovered this about the time the option was given to D. C.   Affidavits were made by B.'s attorney and by D. C. that they informed C. C. of the option, and of the time when the payment would be made, but that he said nothing of any objection to B.'s claim. It further appeared that C. C. was unfriendly to D. C.   *Held*, that a new trial was

properly denied, as the conduct of C. C. showed an intention to defraud D. C.: and, moreover, the contract itself showed that C. C. was not induced to make it by reason of any such misrepresentations, but in consideration of services therein specified.

Appeal from special term, New York county.

Action by Stephen M. Chester against Francois Henry Jumel and others to determine the respective interests of parties to a fund. Charles A. de Chambrun and others appeal from an order denying his motion for a new trial. For former reports see 5 N. Y. Supp. 809 *et seq.*, and 7 N. Y. Supp. 949, *mem.*

Argued before VAN BRUNT, P. J., and BRADY and DANIELS, JJ.

*Wheeler, Cortes & Godkin*, (*Everett P. Wheeler*, of counsel,) for appellants. *Edward Winslow Paige*, for respondent.

DANIELS, J. The appellant Chambrun entered into an agreement with certain persons known as the "heirs of the Jumel estate," by which they agreed to transfer to him, and did in fact transfer, 47½ per cent. of the result of legal proceedings commenced to establish their right to participate in the estate of Stephen Jumel. This appellant entered into various agreements with other persons, securing to them shares of the interest to be acquired by him under his agreements. Before the agreement was made, Stanislaus le Bourgeois had been employed by Chambrun to ascertain and discover who the heirs were of this Jumel estate. Both himself and these heirs resided in France, and Chambrun promised Le Bourgeois a compensation for the performance of this service. He did, to a certain extent, perform the service, and ascertained the names and residences of persons sustaining the relation of heirs to the deceased Stephen Jumel; and it was after that the agreement was entered into between Chambrun and the heirs, securing to him this 47½ per cent. of the property to be recovered by his efforts and interposition. After the making of the agreement with the heirs in this manner, Chambrun entered into an agreement with Bourgeois, securing to him 7½ per cent. of the proceeds given to him by his agreement with the heirs of Stephen Jumel. Legal proceedings were instituted, which finally resulted in the recovery of a large amount in favor of these heirs, and, to the extent of 47½ per cent., Chambrun, and those to whom he had parted with various shares of his rights, were interested in the property so recovered. A dispute arose between these persons and the heirs concerning the amounts which they were respectively entitled to receive, and to settle those disputes this action was brought. The issues in the action were referred to a referee, and were heard and decided by him, and his final report was made in May, 1888, and judgment has been entered upon that report.

No serious contest appears to have arisen in the litigation as to the right of Bourgeois to receive 7½ per cent. of the amount which Chambrun was entitled to under the contract obtained by him; and that was finally allowed by the referee, and by the judgment in this action, owing to the force and effect which the agreement between Chambrun and Bourgeois was deemed entitled to receive. After the recovery of this judgment, and in September, 1888, Chambrun has stated in his affidavit that he discovered the fact to be that Bourgeois was not entitled to receive this 7½ per cent. by reason of any agreement made between himself and the heirs of Jumel; and it is stated by him that Bourgeois represented to him, before any concession of the 7½ per cent. was made, that he had such an agreement with the heirs of Jumel. And after the discovery of the alleged fact that no agreement whatever existed between Bourgeois and the heirs of Jumel, and in December, 1888, a motion was made to vacate so much of the judgment as secured to Bourgeois this 7½ per cent., and to direct a new trial on the ground of this newly-discovered evidence. But this motion was denied in the month of November, 1889.

To resist the motion it was shown that the defendant Douglas Campbell had, in April, 1888, received from Samuel L. M. Barlow, who was one of the attorneys representing Bourgeois, an option for the purchase of the claim secured to him by the judgment, at any time within six months, for the sum of $15,000 and interest. Towards the last of October, 1888, it is shown by the affidavit of Barlow, as well as that also of Campbell himself, that the latter elected to avail himself of the option in this manner secured, and then paid to Barlow, upon the purchase price of the interest, the sum of $5,000; that the residue of the purchase money remained unpaid until the 7th of December, 1888, when it was paid by Mr. Ashbel Green, who had taken an assignment of this interest in the judgment from Campbell. From the affidavit of Barlow, it appears that Chambrun was informed by him of the existence of this option in favor of the defendant Campbell soon after it was given. The defendant Campbell has also sworn to conversations between himself and Chambrun concerning the fact of this option, and he has stated that the question of the validity of the claim of Bourgeois came up frequently in negotiations relating to the settlement of the litigation, but that Chambrun at no time intimated to him that there existed any ground of objection to the claim, except that which had been made, and was necessarily disposed of, upon the trial before the referee. The affidavit of Barlow establishes the further fact, also, that in the early part of December he had a conversation with Chambrun, in which the latter inquired if the remaining sum of money to be paid under the option had in fact been paid, and was then informed that it would be paid that day, or the day following, according to the agreement; but this affiant states that Chambrun in no way informed him of any defect in the claim of Bourgeois, or of any defense existing against it, or that the agreement from himself had been obtained by means of false representations.

Chambrun, in his affidavit, states that he discovered, in September, 1888, that no agreement had been made between the heirs of Jumel and Bourgeois to give to him this sum of $7\frac{1}{2}$ per cent. of the amount mentioned in their agreement with Chambrun. It is plain, therefore, from these affidavits that Chambrun acquired knowledge of the fact that Campbell had secured this option soon after the time when it was given, and that he himself discovered that no such agreement had been made with the heirs of Jumel as he states Bourgeois to have represented to him had been secured. This was before any of the money had been paid, either by Campbell or Green, to obtain the title, which then depended upon the performance of the terms of the offer, and yet Chambrun made no disclosure or representation of the fact, stated to have been discovered by him, to the defendant Campbell, or of his disposition on that account to question so much of the judgment as provided for the payment of this claim to the defendant Bourgeois. From the information he had secured, he knew about the time when the six months' option would expire, and he had reason to believe, inasmuch as the price to be paid for the interest secured to Bourgeois under the judgment was very much less than the claim itself, that the option would be performed, and the interest acquired under it by the defendant Campbell. Yet he at no time gave him the least information or intimation that he should attempt to open so much of the judgment as secured this claim, and again contest it on the ground that it had no actual existence. This failure on his part to disclose what he states he had discovered; and his intention to apply for an opportunity of resisting the enforcement of so much of the judgment, there is reason to believe, as he had become unfriendly with the defendant Campbell, was intended to permit him to pay out the money which was payable under the option, and after that to prevent his recovery of the amount through the assignment of the interest which was to be given to him. He knew all the facts and what was in the future to take place, and in no manner conveyed to Campbell the information which he himself understood would be necessary to protect him against loss;

and to permit him after that to vacate so much of the judgment, and litigate this claim again, would secure to him the advantage of this disingenuous conduct on his part. If he intended to question the right of Campbell under the option to the acquisition of the interest of Bourgeois in the judgment, reasonable fairness required on his part that he should have imparted information of the existence of that intention to Campbell before this money was partially paid over by him to Barlow, and before the residue was paid by Mr. Green. The conduct of the defendant Chambrun appears to have been actuated by the intention to deceive and mislead, for he was informed by Barlow as to the amount remaining unpaid in the early part of December, and that it was to be paid that day or the next day, to complete the rights dependent upon the option. It is not too much to infer from the facts which the affidavits have proved to have taken place that Chambrun intended that Campbell should act in ignorance of what he states to have been his discovery and intention in fulfilling the terms of the option, and then should be deprived of the advantage expected to be thereby secured through the success of the application for a new trial on the ground of newly-discovered evidence. This would be a fraud, if it should be allowed, upon the defendant Campbell; and, in the exercise of the wholesome discretion which has been vested in the courts over applications of this description, it was entirely just that this motion should be denied.

It appears further, by the contract entered into between Chambrun and Bourgeois on the 10th of July, 1876, that it had not been induced by any understanding or belief on the part of Chambrun that Bourgeois had entered into an agreement with the heirs of Jumel for the payment to him of this sum of 7½ per cent. This agreement was made soon after that which had been originally obtained by Chambrun from the heirs of Jumel, and it was embodied and expressed, as it has been found by the referee, in the following language: "NEW YORK, 10 July, 1876. SIR: Pursuant to the contract made under private seal between the heirs Jumel [named Stephen Jumel] and me, dated Mont Marsan, 20 of April of this year, I transfer, substitute, and abandon to you, of the forty-seven and a half per cent. which are given to me in consideration of my discovering the right to the succession, for compensation and expenses in the matter of recovering said inheritance, the sum resulting from such event, of seven and one-half per cent., in consideration of the services you have rendered in discovering heirs of Stephen Jumel who were unknown to me, and in settling with them in advance, and in my absence, and in my name, the basis of the contract of April 20th, 1876. Believe me, sir, yours, ADOLPH DE CHAMBRUN. P. S. If, after having settled with the parties interested with me in said affair, it is possible, after having thus taken, in the first place, personally, for a sum equal to (10%) ten per cent. on the forty per cent., to reserve, which I hope will be the case, a sum in addition to the forty per cent. remaining after the transfer to you of (7½) seven and a half per cent., in said transaction, I will bring your share to ten per cent." And from the statement in the agreement itself, it appears not that the agreement had been brought about to compensate Bourgeois for a contract entered into between himself and the heirs of Jumel, but that it was made in consideration of the services which Bourgeois had rendered for Chambrun in discovering the heirs of Jumel, who were unknown to Chambrun, and in settling with them in advance the basis of the contract of April 20, 1876. This is a statement of a distinct and different consideration from that mentioned by Chambrun as the one for which he was induced to make this concession of 7½ per cent. to Bourgeois. No such consideration is in any manner referred to, as that the heirs of Jumel had become bound to pay to Bourgeois this 7½ per cent. But the plain concession of the agreement is that it was to be paid to Bourgeois for the services which he had rendered in discovering the heirs, and bringing about the making of this original agreement; and that agree-

ment secured to Chambrun the $47\frac{1}{2}$ per cent. already mentioned. In this state of the agreement between Chambrun and Bourgeois, a new trial of this part of the controversy would be of no service to the former; for it is entirely evident that he has not been induced to part with anything under the belief that Bourgeois had entered into an agreement with the heirs of Jumel for $7\frac{1}{2}$ per cent. of the $47\frac{1}{2}$ secured to Chambrun. Proving that Bourgeois had falsely represented to Chambrun that he had an agreement with the heirs for $7\frac{1}{2}$ per per cent. would not have the effect of annulling the agreement made on the 10th of July upon an entirely different and distinct consideration. That agreement, by its terms, was not for the payment to Bourgeois of any sum agreed to be given to him by the heirs of Jumel, but it was for a sum agreed to be given to him by Chambrun for the services mentioned by him in the agreement itself. A new trial of so much of the action as included this $7\frac{1}{2}$ per cent. would, in this state of the facts, be of no service to the defendant Chambrun; for, even though the misrepresentation was made as he has stated it, that could not be allowed to vacate or annul the agreement, made, as it was, upon an entirely different consideration. On the 12th of June, 1883, a further agreement was made between Chambrun and Bourgeois, but it did not change this preceding agreement of the 10th of July, 1876. It provided, in detail, how the amount should be secured and paid to Bourgeois, and was made upon the basis of the entire validity of the agreement of the 10th of July. Upon this ground, as well as that arising out of the conduct of Chambrun himself after he had obtained information of the existence of the option, the court was justified in denying the motion for a new trial; and the order which was made should be affirmed, with $10 costs, and the disbursements. All concur.